Filed 10/29/25  Estate of Mack CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| Estate of LORNA E. MACK, Deceased. | B340114<br><br>(Los Angeles County<br>Super. Ct. No. 20STPB10284) |
| MAXINE MACK, as Administrator, etc.,<br><br>Petitioner and Respondent,<br><br>v.<br><br>NOVELETTE MACK WOODS,<br><br>Objector and Appellant. |  |

APPEAL from an order of the Superior Court of Los Angeles County, Gus T. May, Judge.  Affirmed.

Law Office of Noel and Ian Noel for Objector and Appellant.

No appearance for Petitioner and Respondent.

————————————————

Objector and appellant Novelette Mack Woods appeals from an order granting petitioner and respondent Maxine Mack's motion for monetary sanctions under Code of Civil Procedure section 128.7.[1]  We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Woods and Mack are siblings.  Their mother, Lorna Mack, died in June 2020.  Mack subsequently filed a petition for letters of administration regarding the decedent's estate.  Woods objected and filed a competing petition.

In September 2021, Woods filed a petition through counsel for an order under Probate Code section 850.[2]  The petition sought an order confirming that a vacant lot in Palmdale, to which her parents originally acquired title as joint tenants in 2005, was not an estate asset.  Woods alleged that her father, who predeceased the decedent, had executed a deed conveying his title to the Palmdale property to Woods during his lifetime.  She asserted the deed could not be recorded due to the COVID-19 pandemic and was now missing.  She also claimed the decedent executed a quitclaim deed that was never recorded, granting the Palmdale property to Woods.  The petition attached an unnotarized, unrecorded quitclaim deed for the Palmdale property, bearing the decedent's purported signature and dated June 2020.  In September 2022, the trial court denied the petition without prejudice for failure to clear a probate note.

---

[1]     All further statutory references are to the Code of Civil Procedure.

[2]     The record does not contain Woods's initial Probate Code section 850 petition.  The summary of her arguments is taken from Mack's motion for sanctions.  Woods does not dispute this summary on appeal.

In November 2022, Woods attempted to file an amended petition in propria persona (pro. per.).[3] The trial court informed Woods that pursuant to a 2016 order designating Woods as a vexatious litigant, she was required to obtain leave of the presiding judge before filing the amended petition. The court subsequently dismissed the petition after Woods failed to timely file an order from the presiding judge permitting the filing, and Woods withdrew the petition.

In August 2023, Woods retained Ian Noel as counsel. Woods filed an amended petition under Probate Code section 850 for an order conveying real property to Woods and several pieces of the decedent's personal property to the estate. The amended petition alleged that the decedent purchased the Palmdale property for Woods in 2005; the decedent and Woods's father took title as joint tenants until he died in 2018; and Woods gave the decedent the down payment for the property and monthly payments for three years.

According to Woods's amended petition, the decedent quitclaimed the Palmdale property to her in June 2020, and Mack notarized the deed. Woods claimed that she could not record the deed in person because the recorder's office was closed due to the COVID-19 pandemic. Two days later, the decedent passed away. Her papers and effects remained in her room at Mack's residence. Woods contended that Mack "now states that

---

[3] Woods's pro. per. petition is not included in the record on appeal.

3

she cannot find that original deed."[4]  Woods verified the amended petition.

In October 2023, Mack's counsel, Steven Sosa, sent a meet-and-confer letter to Noel demanding that Woods withdraw the amended petition.  Noting that Noel was newly retained, Sosa provided a summary of the procedural history of the case.  Among other things, Sosa informed Noel that Woods's first petition was supported only by an unnotarized and unrecorded deed for the Palmdale property, and the property's title history did not disclose any recorded instruments corroborating Woods's ownership claim.  Sosa advised that he would proceed with a sanctions motion unless Woods voluntarily withdrew the amended petition.  Noel did not respond to the letter.

On October 26, 2023, Mack served Woods with a motion for sanctions under section 128.7.  The motion contended that Woods's amended petition lacked legal merit and evidentiary support.  Attached to the motion were recorded deeds reflecting conveyances of title to the Palmdale property between Woods's parents and her brother.  The recorded deeds did not show that Woods had any ownership interest in the property.  The motion pointed out that, unlike the original petition that "provided unpersuasive evidence" of Woods's claim to the Palmdale property "in the form of an unnotarized deed," her amended petition "fail[ed] to provide any evidence in support of its claim.  Indeed, the allegations in the Amended Petition and the Petition,

---

[4]    Woods's amended petition also requested an order conveying the decedent's property in Lancaster to Woods and conveying the decedent's jewelry and cash to the estate.  Woods alleged the title to the Lancaster property remained in the decedent's name.

4

both of which are verified, contradict each other."  Mack requested $5,250 in attorney fees and $100 in costs, for a total of $5,350 in monetary sanctions.  Woods did not withdraw, correct, or otherwise take action regarding her amended petition after Mack served her with the motion.

On November 20, 2023, Mack filed the motion.  Woods filed an opposition arguing that she had a legal and factual basis for amending her petition.  She contended her allegation that the decedent delivered the unrecorded deed to her supported the inference that it was valid, even if it was not notarized.  With respect to Mack's allegation that the amended petition contradicted her original petition, Woods responded that she was "allowed to amend her petition," and that the change in the amended petition "simply points to a correction from the original and does not render the petition meritless.  It certainly is not the basis to award sanctions or attorney's fees."

After a hearing in February 2024, the court ordered supplemental briefing "based upon the reading of the moving papers and consideration of all presented evidence."  Mack timely filed a supplemental brief.  Woods did not file a brief.

At the continued hearing in May 2024, the court recited its oral tentative on the record.  The court explained that it previously requested supplemental briefing on "an argument touched upon[,] but not fully developed[,] by the moving party, and that is that the First Amended Petition should be considered a sham pleading . . . ."  The court tentatively found that there were significant factual differences between Woods's prior petition and the amended petition, indicating the latter was a sham pleading.  The court tentatively concluded that sanctions

5

were proper because Woods failed to timely file a supplemental brief explaining the differences.

The court heard argument. Noel contended that he was not aware of the factual differences between the petitions and had not filed a supplemental brief because there had been a temporary breakdown in communication between him and Woods. However, he conceded that he could have filed a response to Mack's supplemental brief without Woods's involvement. He nonetheless argued that sanctions were not warranted because he had made efforts to verify facts, and there were no substantive motions or orders about the prior petition that alerted him to issues with the veracity of Woods's amended allegations.

The court questioned whether any sanctions imposed should include costs and fees associated with Sosa's October 2023 letter, noting that the letter did not appear to raise the sham pleading issue. Sosa argued that sanctions should be inclusive of fees and costs related to the letter because it warned Noel that Woods may not have shared all pertinent facts with him and advised him to investigate further before proceeding with the amended pleading.

The court agreed, adopted the tentative, and issued a written ruling granting Mack's motion for sanctions under section 128.7. The court found the substantial differences between Woods's pro. per. petition and the amended petition required her to explain the material differences between the two, "particularly when the pleadings are verified." The court further found that the purported breakdown in communication between Noel and Woods did not relieve Noel of his obligation to continue representing Woods and did not prevent him from filing a supplemental brief on the sham pleading issue. The court

6

further found that the October 2023 letter put Woods and Noel on notice that they would need to "take a closer look at the current pleadings since they would be considered in light of the previous pleadings and rulings." The court imposed $5,350 in sanctions, jointly and severally, on Woods and Noel.

Woods timely appealed.

## DISCUSSION

## I.     Applicable Legal Principles and Standard of Review

Section 128.7 " 'authorizes trial courts to impose sanctions to check abuses in the filing of pleadings, petitions, written notices of motions or similar papers.' [Citation.] Under that authority, trial courts may issue sanctions, including monetary and terminating sanctions, against a party for filing a complaint that is legally or factually frivolous." (*Kumar v. Ramsey* (2021) 71 Cal.App.5th 1110, 1120, citing § 128.7, subds. (b)–(d).)

Section 128.7 prohibits a party seeking sanctions from filing a motion "unless, within 21 days after service of the motion, or any other period as the court may prescribe, the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." (*Id*., subd. (c)(1).) The moving party must first serve the motion, specifically describing the sanctionable conduct, on the opposing party. (*Barnes v. Department of Corrections* (1999) 74 Cal.App.4th 126, 130 (*Barnes*).) " ' "Service of the motion on the offending party begins a [21]-day safe harbor period . . . ." ' [Citation.] The purpose of the safe harbor period is to allow a party to withdraw an objectionable document and thereby conserve judicial resources as well as save the parties the time and expense of litigating sanctions. The statute is remedial, not punitive." (*Broadcast Music, Inc. v. Structured Asset Sales, LLC* (2022) 75 Cal.App.5th

7

596, 605.) If the opposing party "does not withdraw the challenged pleading during that period, then the moving party may file the sanctions motion."[5] (*Transcon Financial, Inc. v. Reid & Hellyer, APC* (2022) 81 Cal.App.5th 547, 550.)

"We review a Code of Civil Procedure section 128.7 sanctions award under the abuse of discretion standard. [Citation.] We presume the trial court's order is correct and do not substitute our judgment for that of the trial court. [Citation.] To be entitled to relief on appeal, the court's action must be sufficiently grave to amount to a manifest miscarriage of justice." (*Peake v. Underwood* (2014) 227 Cal.App.4th 428, 441.)

## II. The Trial Court Did Not Abuse Its Discretion By Imposing Sanctions Under Section 128.7

On appeal, Woods contends that the motion for sanctions failed to comply with the safe harbor provision because the motion did not give Woods notice of the argument that her amended petition was a sham pleading, which was the basis for the court's sanctions award.

The record does not support Woods's argument. The motion described specific conduct to put Woods on notice of a potential sham pleading issue.[6]

---

[5] The Legislature modeled section 128.7 on rule 11 of the Federal Rules of Civil Procedure (rule 11). (*Li v. Majestic Industry Hills LLC* (2009) 177 Cal.App.4th 585, 594; see Fed. Rules Civ. Proc., rule 11(c)(2), 28 U.S.C.) Thus, courts consider federal cases interpreting rule 11 instructive in the section 128.7 context. (*Li*, at p. 594.)

[6] Woods also argues on appeal that Mack failed to comply with section 128.7's safe harbor provision because Sosa's October

The sham pleading doctrine prohibits a party from avoiding the defects of a prior complaint by pleading inconsistent allegations in an amended complaint without a plausible explanation. (*Owens v. Kings Supermarket* (1988) 198 Cal.App.3d 379, 384; see *Smyth v. Berman* (2019) 31 Cal.App.5th 183, 196 [sham pleading doctrine prevented plaintiffs from making factually inconsistent allegations in amended complaints].) Here, Mack's motion expressly stated that the unnotarized and unrecorded quitclaim deed for the Palmdale property—the sole documentary evidence for Woods's claim to the property in her original petition—was omitted from her amended petition. Further, the motion stated that the allegations in the two petitions "contradict[ed] each other."

Woods therefore had notice of discrepancies between her two petitions and the opportunity to assess whether the differences necessitated withdrawal of the amended petition during the safe harbor period. Indeed, she appeared to conduct that assessment. Woods's opposition explained that her amended petition permissibly "correct[ed]" previous allegations and the differences from her previous petition did not warrant dismissal. Mack's motion provided sufficient notice that unexplained

---

2023 letter did not raise sham pleading issues. However, the letter is irrelevant to a determination of whether Mack complied with the safe harbor requirement. "A party does not comply with the notice provisions of section 128.7 simply by sending a letter of its intent to seek sanctions to the offending party." (*Martorana v. Marlin & Saltzman* (2009) 175 Cal.App.4th 685, 700; *Barnes*, *supra*, 74 Cal.App.4th at p. 136 ["[I]nformal notice of an intent to seek sanctions in the future cannot serve as a substitute to the requirements set forth in section 128.7 for a formal noticed motion."].)

9

inconsistencies between Woods's petitions were a basis for the motion for sanctions.  (See *Matrix IV, Inc. v. American Nat. Bank and Trust Co. of Chicago* (7th Cir. 2011) 649 F.3d 539, 552 [although defendant did not expressly identify preclusion doctrines, statement that amended claims were sanctionable " '[i]n light of the [bankruptcy] judgment' " made clear rule 11 sanctions motion would be based on preclusion]; see also *Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.* (2d Cir. 2012) 682 F.3d 170, 174 [rule 11 notice of motion listing grounds for sanctions but no memorandum provided sufficient description of sanctionable conduct].)

Moreover, the underlying policy and meaning of the sham pleading rule is to " 'prevent [an] amended pleading which is only a sham, when it is apparent that no cause of action can be stated truthfully.' " (*McGee v. McNally* (1981) 119 Cal.App.3d 891, 896–897.)  While Mack's motion for sanctions did not use the term "sham pleading," it undisputedly argued that "unpersuasive evidence" cited in the prior petition had been omitted in the amended petition, the amended petition lacked all merit, and it was not filed in good faith.  To the extent that Mack was required to detail the specific conduct underlying the motion beyond asserting, consistent with the statute, that the amended petition was frivolous and lacked evidentiary support, the motion's specific allegations were sufficient.

The record does not support Woods's contention that Mack's motion violated section 128.7's safe harbor provision by failing to describe the sanctionable conduct.  We find no abuse of discretion.

**DISPOSITION**

The trial court's order is affirmed.  As Mack did not make an appearance on appeal, we award no costs.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

HANASONO, J.

11